William Joseph GILLUM, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–89–00272–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 17, 1990.

Rehearing Denied June 1, 1990.

Frances M. Northcutt, Houston, for appellant.

Mary Lou Keel, Houston, for appellee.

Before ROBERTSON and DRAUGHN, JJ., and JACKSON B. SMITH, Jr., J. (Retired, Sitting by Assignment).

## OPINION

ROBERTSON, Justice.

Following appellant's conviction for aggravated robbery, the trial court assessed punishment at life imprisonment. On appeal, appellant asserts as error the trial court's failure to instruct on a lesser included offense of aggravated assault; the trial court's failure to grant a mistrial based on a comment by the prosecutor on the failure of appellant to testify; the trial court's failure to conduct a hearing on appellant's competency to stand trial; and ineffective assistance of counsel. Finding no merit in appellant's arguments, we affirm.

Olympia Coleman, the victim of appellant's crime, was fourteen years old at the

time of his death. The evidence introduced at trial shows that he was on the street selling crack cocaine which was contained in a small matchbox. Three eyewitnesses testified to the events as they observed them on the evening in question.

Victor Johnson, a close friend of the deceased, stated that appellant and two other persons (John and Greg) approached the deceased; that appellant and the deceased exchanged greetings; that appellant grabbed a matchbox from the deceased's hand; that appellant pulled a gun and shot twice; and that he then saw John feeling the deceased's pockets.

Marcus Stephens testified he observed the events from where he was sitting on a nearby truck. He stated that he saw appellant and his two companions (John and Greg) approach the deceased; that one of the three asked "What's up" and that the complainant responded with the same question; that as appellant and the deceased were facing each other, the deceased held out his hand, then reached in his pocket and pulled something out; and that appellant then reached into the deceased's pocket, snatched at his hand and shot the deceased in the face. Appellant then fired another shot, after which he and John ran away.

Gregory Davis, testifying under a grant of immunity, stated he had known the deceased since the deceased was about five years of age. He stated that shortly before the shooting, he instructed the deceased not to show all the rock cocaine, but to only show "two or three." Concerning the shooting, he testified that he overheard the appellant and the deceased have "a conversation about money and exchange"; that he saw "two or three" rocks of cocaine in the deceased's hand; that appellant said they were too small; that the deceased then "went to open the matchbox" and as he did so, appellant "reached for the matchbox, turned the deceased around and shot him in the head." Appellant then ran.

At trial, appellant offered, and the trial court admitted over the state's objection, prior written statements of the three eyewitnesses who testified for the state. It is upon these prior written statements that appellant bases his argument that the evidence shows that if guilty at all, he is guilty only of the lesser included offense of aggravated assault.[1]

Appellant complains that the statements given to the police by Johnson, Stephens, and Davis differed substantially from their trial testimony and that this inconsistency justified an instruction on the lesser included offense of aggravated assault. For instance, he points out that Johnson's original statement said nothing about either a match box or cocaine. He ignores, however, Johnson's statement "when [appellant] grabbed Olympian he said something like 'where's your money?', and started like patting him down, checking him to see if he had any money or anything." He also related that "suddenly one black male, the one who first grabbed Olympian pulled out a gun from somewhere in his coat and took aim and fired at Olympian ... up real close ... hitting Olympian."

The mere fact that Johnson did not mention the match box in his original statement does not entitle appellant to an issue on the lesser included offense of aggravated assault. Johnson's trial testimony was much more detailed than his previous statements. It is apparent even from Johnson's original statement, however, that appellant asked the complainant for his money, patted him down to see if he had any money, searched his pockets, and shot him. This evidence does not indicate that appellant was guilty only of aggravated assault. Evidence that the lesser offense is included within the proof of the greater offense does not automatically warrant a jury charge on the lesser offense. *Lincecum v. State,* 736

---

1. In a cross point, the state contends the trial court erred in admitting the statements into evidence because each of the witnesses had already been impeached by admitting to the prior statements and to their inconsistencies. While the state's contention appears to have merit, and the contents of the prior statements could never be considered as *primary evidence,* we will, nevertheless, address appellant's contention.

S.W.2d 673, 681 (Tex.Crim.App.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 936 (1988). Rather, the evidence must show the appellant, if guilty, is guilty *only* of that lesser offense. *Creel v. State*, 754 S.W.2d 205, 210 (Tex.Crim.App.1988) (emphasis added). We find Johnson's original statement did not meet the requisites for an instruction on the lesser included offense.

Appellant also contends the statement Gregory Davis made to the police demonstrates that if he was guilty, he was guilty only of aggravated assault. In his statement, Davis explained:

> Me and Dennis then talk in the street in front of my house ... Two dudes come walking down Orange Street from the area of the Eastex Freeway. I have seen these two dudes before in the area but I do not know them by name.... These two dudes pass up Victor, Marcus, Scooter ... and come back towards them.... I am now coming up on the two dudes and Scooter. I then saw one of the dudes ... grabbed for Scooter. The next think [sic] I hear is that a shot is fired. I am about six feet away ... when the shot is fired ... I immediately ran ... I was on the ground behind the car when I heard a second shot.

Even if we consider Davis' prior written statement as primary evidence, it does not establish that appellant was guilty only of aggravated assault. In fact, his statement would not support a determination of guilt for any offense because he did not know appellant, did not identify appellant, did not know who fired the first shot, and was behind the car when he heard the second shot. Had this been the only evidence of appellant's guilt, he would have been exonerated. Evidence that exonerates a defendant, however, does not entitle him to a charge on a lesser included offense. *Williams v. State*, 575 S.W.2d 30, 33 (Tex. Crim.App.1979).

Appellant further contends the statement and testimony of Marcus Stephens warranted an instruction on the lesser included offense. Appellant alleges that because Stephens did not know about the match box and the cocaine prior to the shooting, and because he did not know what was in complainant's hand when appellant grabbed at it, he was entitled to the instruction on aggravated assault.

Stephens' statement was similar to Johnson's. He stated he saw "males" going through complainant's jacket and pants pockets, heard two gun shots, and saw one of the males grab complainant by his jacket. This testimony does not show that appellant is guilty only of aggravated assault and does not justify an instruction on the lesser offense. *Creel v. State*, 754 S.W.2d 205, 210 (Tex.Crim.App.1988).

Finally, appellant asserts he should have received an instruction on the lesser included offense because the police did not find any rock cocaine on or near complainant's body. He argues that because no cocaine was found, no robbery occurred, and, therefore, he was entitled to the instruction on the lesser included offense. We find this argument to be mere speculation. It does not demonstrate that appellant is guilty only of the lesser offense of aggravated assault. We overrule his first two points of error.

In his third point of error, appellant asserts the trial court erred in not granting his motion for a mistrial after the prosecutor improperly commented on his failure to testify. During jury argument, the prosecutor stated:

> Clarence Jones tells you that he had been seeing William Joseph Gillum he knows as Frenchy in the neighborhood for at least four or five months, oddly enough, at Calvin's Diner hanging out with who? John Irvin, the man who was with William Joseph Gillum the night he shot and robbed Olympia Denean Coleman. He was there. In fact the very night before Olympia Coleman got shot Clarence Jones saw William Joseph Gillum in Calvin's Diner with John Irvin.
>
> It's interesting what Mr. Leitner said to you in voir dire. He once had a rape case where the defense was a defendant couldn't have done it because he was beating his wife. If the defendant had been any place else, let me tell you, and I

suggest to you you would have heard about it. Whether—

At this point, appellant's counsel objected and argued that the statement, "If the defendant had been any place ... you would have heard about it" was a comment on appellant's failure to testify. The trial court sustained his objection and instructed the jury to disregard the statement.

 While it is well established that the failure of a defendant to testify may not be the subject of comment by the prosecution, it is equally clear that for a prosecutor's comment to violate the right against self incrimination, it must be manifestly intended or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *Montoya v. State*, 744 S.W.2d 15, 35 (Tex.Crim.App.1987) (op. on reh'g), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). We note that the prosecutor's first statement following the comment in issue was "The defendant has a right to subpoena witnesses just as state [sic]." We also note that the appellant called three witnesses during the course of his defense, and that the main thrust of his defense was that John Irvin actually killed the complainant. Appellant, however, failed to call Irvin as a witness.

We find the prosecutor's remarks were not a direct comment upon appellant's failure to testify. Moreover, it is questionable whether the remark even alluded to defendant's failure to testify. Although the trial court sustained appellant's objection, it seems clear that if appellant had alibi witnesses, such as John Irvin, the prosecutor was alluding to appellant's failure to call them. We do not believe the remark to the jury was manifestly intended to be or was of such character that the jury would necessarily take it as a comment on appellant's failure to testify. We overrule appellant's third point of error.

 In his fourth point of error, appellant asserts that after the question of his competency was made known to the trial court, it erred by failing to (1) conduct a hearing; (2) impanel a separate jury to determine appellant's competency to stand trial; and (3) declare a mistrial if the impaneled jury found appellant to be incompetent as required by TEX.CODE CRIM.PROC. ANN. art. 46.02 §§ 2(b), 4(a), 4(c) (Vernon 1979).

Appellant filed an election for the trial judge to assess punishment. After the jury found appellant guilty, it was discharged and the trial judge ordered a presentence investigation. During this period before the sentencing date, defense counsel began receiving a series of letters from appellant that called appellant's competency into question. When defense counsel brought the letters to the trial judge's attention, he discovered the trial judge had also received letters from appellant.

The record reveals the following events concerning appellant's examinations for competency and the conduct of his trial:

(1). As a result of appellant's trial counsel's request for psychiatric examination, appellant was examined by Dr. Jerome Brown on April 8, 1988, and Dr. Brown found him competent to stand trial.

(2). Appellant's trial began September 9, 1988, and concluded September 12, 1988; a pre-sentence investigation was ordered and sentencing was set for November 9, 1988.

(3). On October 7, 1988, appellant's trial counsel filed a motion for another psychiatric examination and on October 28, 1988, appellant was again interviewed by Dr. Brown to determine appellant's competency.

(4). On November 7, 1988, Dr. Brown's report was filed with the trial court. Dr. Brown concluded the appellant was incompetent during his October 28, 1988, interview.

(5). The sentencing date was reset for February 20, 1989, because the state's counsel moved for and was granted an examination of appellant by a psychiatrist, Dr. Fred Fason.

(6). On December 16, 1988, Dr. Fason examined appellant for competency.

(7). On January 9, 1989, Dr. Fason's report was filed with the court. He concluded appellant was competent when he examined him on December 16, 1988.

(8). On January 17, 1989, appellant's counsel requested another examination of appellant by Dr. Jerome Brown. The motion was granted and the sentencing hearing was reset for March 1, 1989.

(9). On March 3, 1989, Dr. Brown interviewed appellant, determined he was competent, and informed the court.

(10). On March 17, 1989, appellant was sentenced.

Appellant argues that once Dr. Brown filed his second report in which he concluded appellant was incompetent, it was incumbent upon the trial court to impanel a jury to determine the competency issue. While appellant's basic contention is correct, he fails to take into consideration the later examination by the same psychiatrist who concluded that at the time of the third examination, appellant was competent to proceed with sentencing. When the sentencing hearing was set on March 17, there simply was *no evidence* from any source that appellant was *then* incompetent. There being no evidence to support a finding of incompetency to stand trial, the trial court did not err in failing to impanel a jury. TEX.CODE CRIM.PROC.ANN. art. 46.02 § 4(c). We overrule appellant's fourth point of error.

■ In appellant's fifth point of error, he alleges he was denied effective assistance of counsel because trial counsel did not adequately pursue the issue of appellant's incompetency to stand trial or of his insanity as a defense to the charge. We have set forth in our discussion of appellant's fourth point of error the facts concerning appellant's trial counsel's pursuit of the incompetency issue. The contention that he did not "adequately pursue the incompetency issue" is not well founded. Concerning the

failure of trial counsel to pursue an insanity defense, trial counsel testified on motion for new trial that he, an investigator, and several interns talked with appellant at different times to see if his version of the facts remained consistent. Trial counsel stated:

> Over a several months' period of time of talking with Mr. Gillum, his story was always the same. I didn't have any problem at that time with proceeding on [the theory that] they had identified the wrong person. And based on that and as lucid as he was talking with me at that time, I had no intentions of going the insanity route.

We agree with the state that the record shows that trial counsel evaluated the trial strategy options available to him and pursued the one that best fit the facts of the case as he knew them to be. The choice to defend on the basis of mistaken identity rather than insanity was one of trial strategy and is presumptively reasonable. Appellant has not shown that the choice was unreasonable. In fact, Dr. Brown's final evaluation of appellant shows that he was of the opinion appellant was sane at the time of the commission of the offense. We overrule appellant's fifth point of error.

We affirm the judgment of the court below.

JACKSON B. SMITH, Jr., Retired Justice, dissenting.

I respectfully dissent to the majority opinion only with respect to its disposition of appellant's point of error number four. In that point of error, appellant asserted the trial court erred in not following the prescribed procedures to determine mental competency. The proper procedure for such a determination is set forth in TEX. CODE CRIM.PROC.ANN. art. 46.02 §§ 2(b), 4(a), 4(c) (Vernon 1979).

I disagree with the majority only in its construction of section 2(b) of art. 46.02 which states:

> (b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any

source, the court *must* conduct a hearing ... To determine whether or not there is evidence to support a finding of incompetency to stand trial. (emphasis added).

I construe the legislature's use of the phrase "must conduct a hearing" in § 2(b) to mean that it intended such hearing to be mandatory. The majority states there was no evidence of incompetency during either phase of appellant's trial. It appears to me that the majority makes the same error as the trial court—conclusively determining there is no evidence without affording appellant a hearing to determine if there is any evidence.

The Texas Court of Criminal Appeals, in addressing an analogous factual situation, stated: "when the issue (incompetency) is raised 'during trial', § 2(b) *mandates* that 'the court ... determine whether or not there is evidence to support a finding of incompetency to stand trial' ..." (emphasis added). *Williams v. State*, 663 S.W.2d 832, 833 (Tex.Crim.App.1984); *see also Sisco v. State*, 599 S.W.2d 607, 609 (Tex.Crim. App.1980).

In the present case, it is undisputed that the question of appellant's competency was raised and no competency hearing was had. However, the majority opinion states: "when the sentencing hearing was set on March 17, there simply was no evidence from any source that appellant was then incompetent." This statement places a time limitation for finding incompetency to the date of the sentencing hearing. There is no such limitation in § 2(b), as it uses the phrase "during the trial." Furthermore, I believe there is evidence in the record of such magnitude that it at least warranted a hearing by the trial court to hear evidence of appellant's incompetency, i.e. (1) nonsensical letters to defense counsel and the judge, (2) medical records concerning appellant's mental competency, (3) medical evaluations of appellant's competency by doctors made at the request of the trial judge, and (4) social security records indicating appellant was receiving disability payments.

One further contention raised by the state, but not addressed in the majority opinion, is that the provisions of art. 46.02 are not applicable to appellant's allegations of incompetency. The state argues that because the question of appellant's incompetency was raised in the period between the jury verdict and sentencing, it was not raised "during the trial" as required by art. 46.02 § 2(b). I find no merit to this contention as it has been previously rejected by the Texas Court of Criminal Appeals in *Williams v. State*, 663 S.W.2d at 833.

Because I believe this court must follow the holdings of the Texas Court of Criminal Appeals in *Williams* and *Sisco*, I would abate this case and remand it to the trial court with instructions to conduct a hearing to determine if there was evidence of appellant's incompetency during the trial. After the hearing, if there is no such evidence, the court should find accordingly and file its finding with this court. If the court finds that there is evidence of appellant's incompetency, it should follow the procedures prescribed by art. 46.02.