ACCEPTED
01-14-00294-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/29/2015 9:52:46 AM
CHRISTOPHER PRINE
CLERK

No. 01-14-00294-CR

In the

**Court of Appeals**

For the

**First District of Texas**

At Houston

◆

No. 1392793

In the 179th District Court

Of Harris County, Texas

◆

**ALBERT NIEVES**

*Appellant*

V.

**THE STATE OF TEXAS**

*Appellee*

◆

STATE'S APPELLATE BRIEF

◆

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

5/29/2015 9:52:46 AM

CHRISTOPHER A. PRINE
Clerk

DEVON ANDERSON
District Attorney
Harris County, Texas

KATIE DAVIS
Assistant District Attorney
Harris County, Texas
State Bar Number: 24070242
davis_katie@dao.hctx.net

GREGORY HOULTON
Assistant District Attorneys
Harris County, Texas

1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5826
Fax Number: (713) 755-5809

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39, the State requests oral argument only if oral argument is requested by the appellant.

## IDENTIFICATION OF THE PARTIES

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Katie Davis**—Assistant District Attorney on appeal

**Angela Smith; Gregory Houlton** — Assistant District Attorneys at trial

*Appellant or Criminal Defendant:*

**Albert Nieves**

*Counsel for Appellant:*

**Joe D. Wells**—Counsel on Appeal

**Patrick Ruzzo; J. Paul Rosemergy**—Counselors at trial

*Trial Judge:*

**Honorable Kristin Guiney**—Judge of 179th District Court

i

# TABLE OF CONTENTS

Page

STATEMENT REGARDING ORAL ARGUMENT .......................................................i

IDENTIFICATION OF THE PARTIES ......................................................................i

TABLE OF CONTENTS................................................................................................ii

INDEX OF AUTHORITIES ........................................................................................iii

STATEMENT OF THE CASE .....................................................................................1

STATEMENT OF FACTS .............................................................................................1

SUMMARY OF THE ARGUMENT............................................................................5

REPLY TO APPELLANT'S FIRST THRU FIFTH POINTS OF ERROR ..................6

I. The appellant has failed to show that his trial counsel rendered a deficient performance that harmed the appellant............................................................6
   A. *The totality of the representation afforded the appellant was above the prevailing professional norms.* ......................................................................................8
   B. *The appellant failed to show that trial counsel was deficient in regards to the presentation of the DNA evidence.* ...........................................................10
   C. *The appellant failed to show that the result of the trial would have been different had trial counsel not made these errors.*....................................................18

REPLY TO APPELLANT'S SIXTH POINT OF ERROR .............................................20

REPLY TO APPELLANT'S SEVENTH POINT OF ERROR ......................................25

I. Standard of Review and Applicable Law..........................................................25
II. The evidence is legally sufficient to support the appellant's conviction for aggravated sexual assault of a child. ...............................................................28

CONCLUSION .............................................................................................................33

CERTIFICATE OF SERVICE AND COMPLIANCE................................................34

# INDEX OF AUTHORITIES

## CASES

*Adames v. State*,
   353 S.W.3d 854 (Tex. Crim. App. 2011) ..............................................................26

*Batiste v. State*,
   888 S.W.2d 9 (Tex. Crim. App. 1994) ..................................................................18

*Biggs v. State*,
   921 S.W.2d 282 (Tex. App.—
   Houston [1st Dist.] 1995, pet. granted) ..............................................................25

*Bone v. State*,
   77 S.W.3d 828 (Tex. Crim. App. 2002) ..................................................... 17, 18

*Campos v. State*,
   01-13-00415-CR, 2015 WL 162123, (Tex. App.—
   Houston [1st Dist.] Jan. 13, 2015), *reh'g overruled* (Feb. 19, 2015),
    *petition for discretionary review filed* (Apr. 22, 2015)...................................32

*Cardenas v. State*,
   30 S.W.3d 384 (Tex. Crim. App. 2000) ..............................................................27

*Cate v. State*,
   124 S.W.3d 922 (Tex. App.—
   Amarillo 2004, pet. ref'd) ....................................................................................15

*Chalker v. State*,
   01-10-00204-CR, 2011 WL 5428970, (Tex. App.—
   Houston [1st Dist.] Nov. 10, 2011, pet. ref'd) ....................................................15

*Chamberlain v. State*,
   998 S.W.2d 230 (Tex. Crim. App. 1999) ............................................................17

*Clayton v. State*,
   235 S.W.3d 772 (Tex. Crim. App. 2007) ........................................ 26, 27, 30, 33

*Coffin v. State*,
   885 S.W.2d 140 (Tex. Crim. App. 1994) ............................................................20

*De La Paz v. State*,
   279 S.W.3d 336 (Tex. Crim. App. 2009).............................................................20

*Drake v. State*,
    860 S.W.2d 182 (Tex. App.—
    Houston [14th Dist.] 1993, pet. ref'd).................................................................21

*Duncan v. State*,
    95 S.W.3d 669 (Tex. App.—
    Houston [1st Dist.] 2002, pet. ref'd)...................................................................24

*Ex parte Napper*,
    322 S.W.3d 202 (Tex. Crim. App. 2010) ................................................. 15, 16, 19

*Ex parte Welborn*,
    785 S.W.2d 391 (Tex.Crim.App.1990)...................................................................17

*Ex parte White*,
    160 S.W.3d 46 (Tex. Crim. App. 2004)..................................................................12

*Gamble v. State*,
    916 S.W.2d 92 (Tex. App.—
    Houston [1st Dist.] 1996, no pet.) ........................................................................14

*Garcia v. State*,
    126 S.W.3d 921 (Tex. Crim. App. 2004) ..............................................................24

*Garcia v. State*,
    563 S.W.2d 925 (Tex. Crim. App. 1978) ..............................................................32

*Geesa v. State*,
    820 S.W.2d 154 (Tex. Crim. App.1991).................................................................27

*Gillum v. State*,
    792 S.W.2d 745 (Tex. App.—
    Houston [1st Dist.] 1990, pet. ref'd) ....................................................................11

*Gonzalez v. State*,
    337 S.W.3d 473 (Tex. App.—
    Houston [1st Dist.] 2011, pet. ref'd)....................................................................27

*Gurka v. State*,
    82 S.W.3d 416 (Tex. App.—
    Austin 2002, pet. ref'd)........................................................................................22

*Harris v. State*,
    790 S.W.2d 568 (Tex. Crim. App. 1989) ..............................................................25

*Head v. State,*
4 S.W.3d 258 (Tex. Crim. App. 1999) ..............................................21

*Hernandez v. State,*
988 S.W.2d 770 (Tex. Crim. App. 1999) .............................................6

*Hooper v. State,*
214 S.W.3d 9 (Tex. Crim. App. 2007) ...............................................26

*In re R.R.,*
373 S.W.3d 730 (Tex. App.—
Houston [14th Dist.] 2012, pet. filed)..................................................30

*Jackson v. Virginia,*
443 U.S. 307 (1979).................................................................. 26, 33

*Johnson v. State,*
419 S.W.3d 665 (Tex. App.—
Houston [1st Dist.] 2013),
*pet. ref'd* (Mar. 19, 2014) ......................................................... 29, 30

*Johnson v. State,*
871 S.W.2d 183 (Tex. Crim. App. 1993)...........................................27

*Johnson v. State,*
967 S.W.2d 410 (Tex. Crim. App. 1998).............................................24

*Laster v. State,*
275 S.W.3d 512 (Tex. Crim. App. 2009) ...........................................27

*Lee v. State,*
176 S.W.3d 452 (Tex. App.—
Houston [1st Dist.] 2004)
aff'd, 206 S.W.3d 620 (Tex. Crim. App. 2006)............................... 28, 30

*Lopez v. State,*
343 S.W.3d 137 (Tex. Crim. App. 2011).........................................7, 18

*Lopez v. State,*
884 S.W.2d 918 (Tex. App.—
Austin 1994, pet. ref'd) ...............................................................27

*Mallet v. State,*
65 S.W.3d 59 (Tex. Crim. App. 2001) ..............................................10

*Matthews v. State,*
830 S.W.2d 342 (Tex. App.—
Houston [14th Dist.] 1992, no pet.) ...................................................... 11, 15

*Mayes v. State,*
816 S.W.2d 79 (Tex. Crim. App. 1991) ...............................................24

*Miniel v. State,*
831 S.W.2d 310 (Tex. Crim. App. 1992) ...............................................7

*Mitchell v. State,*
68 S.W.3d 640 (Tex. Crim. App. 2002) ...............................................7

*Montgomery v. State,*
810 S.W.2d 372 (Tex. Crim. App. 1991)...............................................20

*Mosley v. State,*
141 S.W.3d 816 (Tex. App.—
Texarkana 2004, pet. ref'd) ...............................................14

*Motilla v. State,*
78 S.W.3d 352 (Tex. Crim. App. 2002)...................................... 23, 24

*Ortiz v. State,*
93 S.W.3d 79 (Tex. Crim. App. 2002)...............................................12

*Paulson v. State,*
28 S.W.3d 570 (Tex. Crim. App. 2000)...............................................27

*Powell v. State,*
194 S.W.3d 503 (Tex. Crim. App. 2006) ...............................................33

*Reed v. State,*
158 S.W.3d 44 (Tex. App.—
Houston [14th Dist.] 2005, pet. ref'd) ...............................................26

*Reynolds v. State,*
848 S.W.2d 785 (Tex. App.—
Houston [14th Dist.] 1993, pet. ref'd)...............................................23

*Roberson v. State,*
16 S.W.3d 156 (Tex. App.—
Austin 2000, pet. ref'd) ...............................................31

*Rodriguez v. State,*
336 S.W.3d 294 (Tex. App.—
San Antonio 2010, pet. ref'd) ...............................................17

*Rodriguez v. State,*
  899 S.W.2d 658 (Tex. Crim. App. 1995) ................................................................7

*Skinner v. State,*
  293 S.W.3d 196 (Tex. Crim. App. 2009) ............................................................16

*Smith v. State,*
  286 S.W.3d 333 (Tex. Crim. App. 2009) ..............................................................7

*Solomon v. State,*
  49 S.W.3d 356 (Tex. Crim. App. 2001) ..............................................................24

*Strickland v. Washington,*
  466 U.S. 668 (1984) ................................................................ 6, 7, 8, 18, 19

*Temple v. State,*
  390 S.W.3d 341 (Tex. Crim. App. 2013) .......................................... 26, 27

*Thompson v. State,*
  691 S.W.2d 627 (Tex. Crim. App. 1984) ..........................................................23

*Thompson v. State,*
  9 S.W.3d 808 (Tex. Crim. App. 1999) ....................................... 10, 14

*Tinker v. State,*
  148 S.W.3d 666 (Tex. App.—
  Houston [14th Dist.] 2004, no pet.) ....................................................32

*Valencia v. State,*
  891 S.W.2d 652 (Tex. App.—
  Houston [1st Dist.] 1993), *rev'd on other grounds,*
  946 S.W.2d 81 (Tex. Crim. App. 1997)..............................................18

*Walters v. State,*
  247 S.W.3d 204 (Tex. Crim. App. 2007) ...................................... 23, 24

*Wilkerson v. State,*
  726 S.W.2d 542 (Tex. Crim. App. 1986),
  cert. denied, 480 U.S. 940 (1987) ........................................................7

*Woodford v. Visciotti,*
  537 U.S. 19 (2002)..............................................................................18

## STATUTES

TEX. CODE CRIM. PROC ANN.
    art. 57.01 (4) (West 2010) ..............................................................1

TEX. CODE CRIM. PROC. ANN.
    § art. 38.072 (West supp. 2014) ................................................21

TEX. CODE CRIM. PROC. ANN.
    art. 38.07 (West supp. 2014) .....................................................29

TEX. CODE CRIM. PROC. ANN.
    art. 57.02(h) (West supp. 2014) ..................................................1

TEX. CODE CRIM. PROC. ANN.
    art. 57.03(d) (West 2010) .............................................................1

TEX. PENAL CODE § 22.021(a)(1)(B) (West supp. 2014) ..........................27

## RULES

TEX. R. APP. P. 33.1(a)(1)(A) .........................................................22

TEX. R. APP. P. 38.1(i) ......................................................................11

TEX. R. APP. P. 39 ................................................................................ i

TEX. R. APP. P. 44.2(b) ............................................................ 22, 24

TEX. R. EVID. 103 ...........................................................................22

TEX. R. EVID. 801(a) .......................................................................20

TEX. R. EVID. 801(d) .......................................................................20

## OTHER AUTHORITIES

"consistent" *Merriam-Webster Online Dictionary*, 2015, http://www.merriam-
    webster.com/dictionary/consistent (May 19, 2015)..............................13

"match" *Merriam-Webster Online Dictionary*, 2015, http://www.merriam-
    webster.com/dictionary/match, (May 19, 2015) .................................13

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF THE CASE

The State charged the appellant with aggravated sexual assault of a child, and the jury found the appellant guilty (CR – 9, 277, 286-87; 8 RR 4). The trial court sentenced him in accordance with the jury's verdict to ten years in prison in the Texas Department of Criminal Justice, Institutional Division (CR – 285; 8 RR 38). The appellant filed a timely notice of appeal, and the trial court certified that he had the right to appeal (CR – 289-91).

## STATEMENT OF FACTS

The appellant sexually molested Jane[1] at his home when she was four years old (4 RR 60; 6 RR 13-15). The appellant was Jane's uncle through his marriage to Brenda Nieves, the sister of Jane's mother (4 RR 45). On the evening of June 2, 2011, Jane's parents, Noemi and Lincon Guerra, had planned a date night; Jane and her two brothers went to the appellant's home to spend the night (4 RR 45, 50-

---

[1] A person "who has access to or obtains the name, address, telephone number, or other identifying information of a victim younger than 17 years of age may not release or disclose the identifying information to any person who is not assisting in the investigation, prosecution, or defense of the case." TEX. CODE CRIM. PROC. ANN. art. 57.02(h) (West supp. 2014). The term "victim" means a person who was the subject of: "(A) an offense the commission of which leads to a reportable conviction or adjudication under Chapter 62; or (B) an offense that is part of the same criminal episode, as defined by Section 3.01, Penal Code, as an offense described by Paragraph (A)." TEX. CODE CRIM. PROC. ANN. art. 57.01 (4) (West 2010). The release or disclosure of such information to any person is a class C misdemeanor. TEX. CODE CRIM. PROC. ANN. art. 57.03(d) (West 2010). Therefore, the pseudonym "Jane" will be used for the victim in this case.

52). This was common because the appellant's two children, Janelle and Andy, were close in age to Jane and her brothers (4 RR 50-51, 55). The families were very close; they would frequently do things together and spend the night at each other's homes (4 RR 46-51; 7 RR 17-16). Lincon, an ordained pastor, considered the appellant to be his best friend (5 RR 106). At the appellant's home, Jane stayed in the same bed as Janelle, and the boys would stay in the other bed with Andy (6 RR 13-14).

That evening, Jane woke up to a "weird feeling" and found the appellant was licking her private part (6 RR 13-14). The appellant had pulled her pants off, pulled her underwear down and was moving his tongue up and down on her private part (6 RR 13-15, 23). Jane saw his hair and part of his face (6 RR 14). Jane was scared and nervous to tell anyone (6 RR 23-24). It was not the first time that the appellant had licked her private part (6 RR 21-22).

The following morning, Jane and her brother's went home (4 RR 60). Noemi noticed that Jane was angry and in a bad mood (4 RR 60, 62). Noemi asked Jane how the night before went, and Jane responded, "I don't know why [the appellant] always does this." (4 RR 61). Confused and concerned, Noemi asked Jane what she meant, but Jane responded, "nothing." (4 RR 61-63). A couple of hours later during snack time, Noemi noticed that Jane seemed quiet and down (4 RR 63). Later in Jane's room, Noemi again questioned her about what she meant by her statement,

and Jane stated that the appellant pulls down her pants and licks her private part (4 RR 65). Jane demonstrated with her tongue and pointed to her female sexual organ (4 RR 65-67; 5 RR 110-11; 6 RR 11-12, 19, 23).

Noemi was shocked and took Jane to tell her father (4 RR 68). After Jane had told Lincon what the appellant did to her, Noemi and Lincon called Noemi's brother, Cesar Vega-Ayala, and asked him for advice (4 RR 69-71; 5 RR 109-12). Cesar invited the appellant and Brenda over to the Guerra's home for a family dinner (4 RR 69-73). After dinner, Noemi confronted the appellant with what Jane had told her (4 RR 72-73). The appellant denied it, but he did not provide an explanation (4 RR 75). Instead, the appellant stated that he did not want to be away from them (4 RR 75). The families prayed at the end of the conversation (4 RR 74). Noemi and Lincon did not see the appellant again (4 RR 86).

Jane took a bath in her parent's bathroom on June 3 and left her pink underwear on the bathroom floor (4 RR 80-81). Noemi placed the underwear in a plastic bag and kept it in her closet in case it was needed (4 RR 81-84). Noemi and Lincon took Jane to the doctor that next Monday (4 RR 89). Jane's doctor told Noemi to take Jane to Texas Children's Hospital (TCH) immediately (4 RR 90-93).

At TCH, Noemi was interviewed, and Jane received a sexual assault exam (5 RR 161-71). *See* (St. Exs. #6, 11). Nadia Villareal, a sexual assault nurse examiner

(SANE), performed the exam and took swabs of Jane's vaginal area (5 RR 161, 171-74). *See* (St. Ex. #6). Villareal placed the swabs in a sealed "rape kit box" and gave the box to an officer so that it could be tested by the crime lab (5 RR 176-77). Although Villareal did not find any injuries on Jane, none would have been expected due to the nature of the allegations (5 RR 168-69; 178). *See* (St. Ex. #6).

Sergeant Jerry McClure with the Crimes Against Children Division of the Harris County Sheriff's Office (HCSO) was assigned the case (5 RR 188-93). McClure contacted Noemi and asked her to bring Jane to the Children's Assessment Center (CAC) to be forensically interviewed (5 RR 195). On June 8, Jane was forensically interviewed, and McClure interviewed Noemi (5 RR 195-98). Noemi provided McClure Jane's pink underwear in the sealed plastic bag (5 RR 196). McClure took the underwear, sealed it in an evidence envelope, and sent it to be tested (5 RR 197). McClure attempted to contact the appellant regarding the allegations, but received a call from the appellant's attorney who stated that the appellant would not provide a statement (5 RR 198). Believing that an offense had occurred, McClure presented the case for charges to be filed (5 RR 199). Subsequent to charges being filed, the appellant provided a DNA sample (5 RR 214).

Michal Pierce, a DNA analyst with the Harris County Institute of Forensic Sciences, tested Jane's pink underwear (6 RR 51, 82-85). Pierce found a mixture of

DNA profiles on Jane's underwear (5 RR 86-87). Pierce determined that Jane was a major contributor and that two unknown males were minor contributors (5 RR 87). The appellant's DNA was tested against 16 different locations on the underwear, including the crotch area, and Pierce determined that he could not be excluded as a contributor (6 RR 88-89, 96-97). Pierce additionally tested the DNA against Jane's male family members, but she could not form a conclusion because there was insufficient information on the second male profile (6 RR 93).

## SUMMARY OF THE ARGUMENT

In his first five points of error, the appellant argues that trial counsel was ineffective with regards to his handling of the DNA evidence presented. But the appellant failed to overcome the presumption of sound trial strategy. Moreover, the appellant failed to show how he was prejudiced.

The appellant also challenges the trial court's denial of his hearsay objection to Lincon Guerra's testimony that Jane was the one who described the sexual abuse to him. But the mere fact that Jane told him something, without the content of her statement, was not hearsay; thus, the trial court did not abuse its discretion in admitting the testimony. Furthermore, the appellant failed to show harm.

Finally, the appellant's challenge to the sufficiency of the evidence is without merit. The evidence admitted in this case was legally sufficient to enable a rational fact finder to find each element of the offense of aggravated sexual assault

5

of a child, including Jane's account of the sexual assault by the appellant, giving due deference to the jury's role as the fact finder and judge of the credibility of the evidence, and reviewing the record in the light most favorable to the guilty verdict.

## REPLY TO APPELLANT'S FIRST THRU FIFTH POINTS OF ERROR

In the appellant's first five points of error, he argues that he received ineffective assistance of counsel regarding the DNA evidence. He specifically claims that his trial counsel: (1) failed to raise his Hispanic heritage during the cross-examination of the DNA expert (App'nt Brf. 12-13); (2) failed to object to a mischaracterization of the evidence by the State (App'nt Brf. 13-14); (3) misstated the evidence in the State's favor during closing argument (App'nt Brf. 15-16); (4) failed to retain a DNA expert (App'nt Brf. 16-17); and (5) denied him due process by the cumulative effect of these errors (App'nt Brf. 17-18).

I. **The appellant has failed to show that his trial counsel rendered a deficient performance that harmed the appellant.**

A claim of ineffective assistance is governed by the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999) (holding a *Strickland* analysis also applies to determine if the appellant received ineffective assistance of counsel at the punishment phase of his trial). In order to prove an ineffective assistance claim, the appellant must first show that the trial counsel's performance was deficient. *Strickland*, 988

6

S.W.2d at 687; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). "Specifically [the appellant] must prove by a preponderance of the evidence, that the trial counsel's representation fell below the objective standard of professional norms." *Mitchell*, 68 S.W.3d at 642; *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). The appellant must also show that the deficient performance, affirmatively demonstrated in the record, prejudiced his defense. *Strickland*, 466 U.S. at 687. Prejudice is shown by the reasonable probability that but for his trial counsel's unprofessional errors, the result of the proceeding would have been different. *Mitchell*, 68 S.W.3d at 642.

In reviewing a claim of ineffective assistance, a reviewing court presumes trial counsel's competence, and the appellant has the burden to rebut this presumption by proving that his attorney's representation was not sound strategy. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992) (citing *Strickland*, 466 U.S. at 689). An appellate court looks to the totality of the representation, rather than isolated acts or omissions of trial counsel. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986), *cert. denied*, 480 U.S. 940 (1987); *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). And an appellate court does not judge trial counsel's decisions in hindsight. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Rather, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

7

adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. a 686.

The appellant argues that his trial counsel was deficient in four separate instances or that the cumulative effect of these errors denied him due process. (App'nt Brf. 7, 12-18). The appellant's arguments lack merit for several reasons. First, the totality of the representation afforded the appellant was above the prevailing professional norms. Second, without a record as to trial counsel's approach or reasoning for his decisions none of the appellant's claims rebuts the strong presumption of a sound trial strategy. Finally, the appellant failed to show that the result of the proceeding would have been different but for his trial counsel's errors.

### A. *The totality of the representation afforded the appellant was above the prevailing professional norms.*

In the present case, the appellant hired Patrick Ruzzo as trial counsel before charges were filed (5 RR 198). Ruzzo made at least twenty appearances and filed several motions on the appellant's behalf (CR – 13-16, 22, 29, 36-38, 43-60, 64, 68, 102-105, 126-152). Ruzzo filed two discovery motions, a request for notice of an outcry witness under Article 38.22, and two motions in limine (CR – 44-56, 61-63, 122-51). The trial court granted various parts of the appellant's motion in limine throughout trial.

At trial, Ruzzo conducted a thorough voir dire,[2] and secured thirty-two challenges for cause by his own motion or agreement (CR – 262-70; 3 RR 130-77, 177-83, 184, 186, 189, 192). Ruzzo, along with J. Paul Rosemergy, cross-examined and impeached several State's witnesses (5 RR 33-82, 95-100). Specifically during Noemi's testimony, Ruzzo was able to develop some doubt by pointing out that she pressured her daughter into making an outcry (5 RR 97-100). Ruzzo was also able to develop some doubt by pointing out that Noemi and Lincon applied for visas to stay in the country pending the outcome of this investigation (5 RR 78-79).

Additionally, throughout trial Ruzzo made objections, many of which were sustained. *See*, e.g., (4 RR 51, 78-79, 88-89, 95-108, 113-23; 5 RR 3-8, 9-13, 24, 28, 30, 66, 86, 88-89, 109-10, 146). Ruzzo was able to keep out any mention of Jane's extraneous outcry regarding that the appellant had also touched her sexual organ with his fingers (4 RR 25-28, 77-79). Specifically with regards to the DNA evidence, Ruzzo was able to emphasize that it was not conclusive, that there was a second male profile in her underwear, and that it did not prove the appellant performed any sexual act on Jane (6 RR 99-107; 7 RR 123-42).

Furthermore, Ruzzo presented testimony from both the appellant and Brenda who provided a reasonable explanation for why the appellant was in the

---

[2] In fact, Ruzzo conducted two thorough voir dires (2 RR 121-48; 3 RR 130-77). The record indicates that the first venire was released after the parties were unable to qualify enough jurors (2 RR 155).

9

children's room at night (7 RR 35-36, 59). In his closing argument, Ruzzo emphasized the inconsistencies in Noemi's testimony, and he argued that the DNA evidence was inconclusive (7 RR 136-40). Thus, the totality of the representation afforded the appellant was above the prevailing professional norms.

B. *The appellant failed to show that trial counsel was deficient in regards to the presentation of the DNA evidence.*

The appellant contends that his trial counsel was deficient in regards to rebutting the DNA evidence against him. But all of his complaints merely indicate that he would have done things differently and are based on speculation. The appellant brings each of his complaints for the first time on direct appeal; thus, the record cannot adequately reflect the motives behind trial counsel's actions. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (holding that in order to defeat the strong presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."); *Mallet v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (noting a record on direct appeal cannot adequately reflect the motives behind trial counsel's actions).

In his first point of error, the appellant argues that his trial counsel was deficient for failing to raise his Hispanic heritage in relation to the DNA evidence during cross-examination and closing argument. But the appellant does not

explain or analyze in what manner this was improper. Nor does the appellant cite any authority to support his position. *See* TEX. R. APP. P. 38.1(i). Trial counsel consistently pointed out the weaknesses in the DNA evidence; he emphasized that there was a second male profile found and demonstrated other reasons for his DNA to be on Jane's underwear consistent with incidental contact (7 RR 136-37). Additionally, he highlighted that the evidence did not prove any sexual assault had occurred (6 RR 97 -108; 7 RR 123-42). Moreover, the jury heard the appellant's testimony that he was Puerto Rican, and the low statistical probabilities based on the Hispanic race provided by the DNA expert (6 RR 97; 7 RR 7). *See* (St. Ex. #8).

The appellant appears to argue that he would have presented the evidence differently. But "[t]he mere fact that another attorney may have employed a different strategy, does not make it ineffective assistance of counsel." *Matthews v. State*, 830 S.W.2d 342, 347 (Tex. App.—Houston [14th Dist.] 1992, no pet.). Additionally, without a sufficient record to show why trial counsel chose to focus on other weaknesses in the DNA evidence, his failure to specifically raise the low statistical probability based on the appellant's Hispanic heritage was not deficient. *See Gillum v. State*, 792 S.W.2d 745 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (finding the mere fact Gillum's attorney chose to defend on basis of mistaken identity rather than insanity was one of trial strategy and presumptively

11

reasonable where Gillum had not shown the choice was unreasonable). Accordingly, the appellant's first point of error should be overruled.

In his second point of error, the appellant argues that trial counsel was deficient for failing to object (App'nt Brf. 13-14). But the appellant failed to show the evidence he complains of was inadmissible. *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002) (holding when an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show as part of his claim that the evidence was inadmissible); *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (noting "[t]o show ineffective assistance of counsel for the failure to object during trial, the applicant must show that the trial judge would have committed error in overruling the objection.").

The appellant complains that the prosecutor's statement that his DNA sample "matched" the male DNA profile found in Jane's underwear was a "gross mischaracterization" of the evidence. (7 RR 63-64). (App'nt Brf. 14). He argues that it misled the jury to believe that the appellant's DNA *was* present in Jane's underwear. (App'nt Brf. 14). But the word "match" is a reasonable substitute for the DNA expert's testimony that the appellant "could not be excluded" and that the locations tested were "consistent" with the appellant's DNA; thus, not a mischaracterization of the evidence (6 RR 86-7, 92).

12

The word match does not necessarily mean 100% the same. Merriam-Webster defines "match" as "a person or thing equal or similar to another," and "consistent" to mean "marked by harmony, regularity, or steady continuity: free from variation or contradiction." *Compare* "match" *Merriam-Webster Online Dictionary*, 2015, [http://www.merriam-webster.com/dictionary/match](http://www.merriam-webster.com/dictionary/match), (May 19, 2015), *with* "consistent" *Merriam-Webster Online Dictionary*, 2015, [http://www.merriam-webster.com/dictionary/consistent](http://www.merriam-webster.com/dictionary/consistent) (May 19, 2015). The statistical evidence showed that the appellant could not be excluded as a contributor to the DNA found on Jane's underwear. *See* (St. Ex. #8) (showing the statistical probability to find this DNA evidence to be 1 in 1,685 for Caucasians; 1 in 1,601 for African-Americans; 1 in 285 for Hispanics). Although the statistic for Hispanic males was only 1 in 285, the DNA evidence found on Jane's underwear was a thing "equal or similar to" the appellant's DNA profile. Therefore, the prosecutor's use of the word match was not a mischaracterization.

Even if the question was a mischaracterization of the evidence, the appellant has failed to show that the failure to object fell below an objective standard of reasonableness.[3] The record does not indicate why trial counsel did not object. The appellant argues that no valid trial strategy could justify his inaction. (App'nt Brf. 14). But it is possible that trial counsel did not want to draw attention to the

---

[3] Moreover, trial counsel did object to the follow up question that the full profile indicated it was not an incidental contact, which is arguably more misleading, but was overruled (7 RR 64).

evidence or have a longer string of questions regarding the DNA evidence. Additionally, it appears part of trial counsel's strategy was to provide an alternative explanation for the results; that the appellant had incidental contact with Jane's underwear due to her being in his home consistently (5 RR 43, 46; 7 RR 25-34, 45-9, 102-4, 137-38).

Without a sufficient record as to why counsel did not object, the existing record does not rebut the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813-14 (declining to speculate on counsel's failure to object to hearsay in light of silent record); *Mosley v. State*, 141 S.W.3d 816, 827 (Tex. App.—Texarkana 2004, pet. ref'd) (finding without a record as to why counsel did not object to the State's mischaracterization of the evidence, the appellant failed to show that his counsel was deficient); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (declining to speculate on various failures to object to admission of evidence). Thus, trial counsel was not deficient for failing to object to this one question and the appellant's second point of error should be overruled.

In his third point of error, the appellant argues that trial counsel's statement that the appellant's DNA was present in Jane's underwear during closing argument was improper. (App'nt Brf. 15-16). But the statement the appellant complains of was trial counsel's rebuttal to the State's claims, not an affirmative

stance that the appellant's DNA was found in the underwear. *See* (7 RR 137-38). Regardless, as previously stated, trial counsel's decision to choose one trial strategy over another does not make it ineffective assistance of counsel. *Matthews*, 830 S.W.2d at 347. Therefore, the appellant's third point of error should be overruled.

In his fourth point of error, the appellant argues that trial counsel was deficient for failing to hire a DNA expert. (App'nt Brf. 16-17). But there is nothing in the record to show that trial counsel did not hire an expert for investigative purposes. The appellant points to trial counsel's closing remarks where he explained to the jury why he did not call his own DNA expert to testify; however, not calling an expert to trial is not the same as not using an expert in trial preparation (7 RR 137).

Regardless, the appellant failed to show that an expert would have testified in a manner that benefited him. *Chalker v. State*, 01-10-00204-CR, 2011 WL 5428970, at *10 (Tex. App.—Houston [1st Dist.] Nov. 10, 2011, pet. ref'd) (mem. op., not designated for publication) (citing *Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd)). There is no evidence that a defense expert would have testified differently than Pierce, and no evidence that the DNA results presented were not credible or that proper procedures were not followed. *Cf. Ex parte Napper*, 322 S.W.3d 202, 216 (Tex. Crim. App. 2010) (finding, after a hearing on the

appellant's motion for new trial, that the trial counsel was deficient in his investigation of Napper's case because evidence was presented the State's DNA expert's statistical frequency estimate was flawed and that proper laboratory practices were not followed in analyzing the DNA evidence).

The appellant speculates that trial counsel did not understand the DNA evidence, and that an expert would have helped him. (App'nt Brf. 17). But, as previously stated, there is nothing in the record to support that contention. Additionally, the decision not to hire an expert can be a sound trial strategy. *See Napper*, 322 S.W.3d at 247 (noting that an attorney may become sufficiently knowledgeable on DNA matters through his own investigation without the aid of an expert); *see also Skinner v. State*, 293 S.W.3d 196, 202–03 (Tex. Crim. App. 2009) (holding that trial counsel's explanation that he did not ask for testing because "he was afraid the DNA would turn out to be appellant's" was sufficient trial strategy). Moreover, it is clear from the record that trial counsel used the State's expert as his own, emphasizing that she could not testify it was for certain the appellant and that it could have been from incidental contact (7 RR 136-37). Thus, the appellant's fourth point of error lacks merit and should be overruled.

In the appellant's fifth point of error, he argues that even if the above errors are not sufficient on their own to show ineffective assistance, their cumulative effect denied him due process. (App'nt Brf. 17-18). But this argument assumes that

trial counsel erred. While a number of errors may become harmful in their cumulative effect, non-errors cannot become error cumulatively. *Rodriguez v. State*, 336 S.W.3d 294, 303 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Chamberlain v. State*, 998 S.W.2d 230 (Tex. Crim. App. 1999)).

Furthermore, the appellant only cites *Ex parte Welborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990), in support of his claim. But in *Welborn*, the court ultimately found Welborn's counsel ineffective because he was unfamiliar with the nature of the case and failed to properly investigate. *Id.* at 396. Here, as previously stated, the totality of the representation afforded the appellant was above the prevailing professional norms. Moreover, *Welborn*, was a habeas corpus proceeding, and there was a record for the court to review counsel's trial strategy. *See id.* Accordingly, as previously stated, this Court should not speculate about why trial counsel made these decisions regarding the DNA evidence. *See Bone v. State*, 77 S.W.3d 828, 833-37 (Tex. Crim. App. 2002) (reiterating *Strickland*'s requirement that the record must reflect the errors and it is not a legal basis for finding counsel deficient the fact merely because he could have provided a better defense). If anything, unlike *Welborn*, the record in the present case shows that trial counsel chose a different trial strategy to rebut the DNA evidence (7 RR 64, 136-38). Thus, the appellant's fifth point of error should be overruled.

17

**C.** *The appellant failed to show that the result of the trial would have been different had trial counsel not made these errors.*

Even if the record affirmatively demonstrated counsel's deficiency, the appellant has failed to show that, but for his trial counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142; *see also Woodford v. Visciotti*, 537 U.S. 19, 22–23 (2002) (noting when it is alleged that counsel performed deficiently at the punishment phase of trial, defendant must prove that there is a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable penalty-phase verdict). In each point of error regarding his trial counsel's deficiencies, the appellant failed to argue that the result of the proceeding would have been different. Moreover, he has not offered or discussed any instances to show how that could be true. *See Bone*, 77 S.W.3d at 837 (noting *Strickland* requires proof of prejudice); *Valencia v. State*, 891 S.W.2d 652, 664 (Tex. App.—Houston [1st Dist.] 1993), *rev'd on other grounds*, 946 S.W.2d 81 (Tex. Crim. App. 1997) (finding the appellant did not prove ineffective when he alleged that the trial would have been different but did not provide any specific examples to show how).

These are not instances in which prejudice is presumed. *See Batiste v. State*, 888 S.W.2d 9, 14-15 (Tex. Crim. App. 1994) (noting that prejudice is presumed in some Sixth Amendment violations such as actual or constructive denial of counsel

18

altogether at a critical stage of the proceeding or an actual conflict of interest). Here, trial counsel was able to cross-examine the DNA expert and put the credibility of the results of the DNA analysis through the adversarial process. *Id.* (citing *Strickland*, 466 U.S. at 685) (finding "For Sixth Amendment purposes, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues denied in advance of the proceeding.") (internal quotations omitted).

The appellant argues that there can be no strategic reason for trial counsel's failures because of the "weight and credibility given to DNA evidence." (App't Brf. 14). But the appellant does not argue that the DNA evidence should have been suppressed; thus, when combined with the other evidence connecting the appellant to the crime, there is no reasonable probability of a change in outcome. As discussed below, Jane's testimony alone established each element of aggravated sexual assault of a child (6 RR 3-48). *See Napper*, 322 S.W.3d at 249 (finding that although trial counsel was deficient in his investigation, the appellant was not prejudiced by the lack of a DNA expert because of the DNA evidence in combination with other evidence against him, including the victim's identification of Napper as her assailant).

Accordingly, the appellant has not shown how he was prejudiced. *See Thompson*, 9 S.W.3d at 812 (requiring the appellant to show a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different in order to prove prejudice). Thus, trial counsel was not ineffective and the appellant's first five points of error should be overruled.

## REPLY TO APPELLANT'S SIXTH POINT OF ERROR

In the appellant's sixth point of error, he complains that the trial court erred in admitting objected-to hearsay. (App'nt Brf. 19-20). Specifically, he complains about an exchange between the State and Lincon regarding how he found out that his daughter had been abused by the appellant. (App'nt Brf. 20). A trial court's decision to admit evidence is reviewed for an abuse of discretion and will not be disturbed if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994) (citing *Montgomery v. State*, 810 S.W.2d 372, 390–93 (Tex. Crim. App. 1991).

During the Lincon's direct examination, the State asked him, "Did your wife tell you that the defendant had sexually abused [Jane] or did [Jane] tell you that?" (5 RR 110). Lincon started to answer that Jane told him, but was cut off by the appellant's objection to leading and hearsay (5 RR 110). The trial court overruled the objection, and Lincon answered that "[Jane] -- Noemi asked her to tell -- [Jane] to tell me. [Jane] told me." (5 RR 110).

The appellant argues that this statement was inadmissible hearsay. (App't Brf. 20). But Lincon's testimony that Jane told him the appellant sexually abused her was not hearsay. Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d); *see also* TEX. R. EVID. 801(a) (defining statement as "an oral or written verbal expression..."). Lincon's testimony did not relate a *statement* by Jane, rather it merely indicated that she gave one without repeating Jane's words or the substance of her words (5 RR 110). *See Drake v. State*, 860 S.W.2d 182, 184 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (holding trial court did not err in admitting testimony of manager of a convenience store where aggravated robbery occurred that he had conversation with store clerk regarding robbery because it was not hearsay; it only revealed that clerk talked with third party but did not relate statement by third-party declarant that was offered for truth of matter asserted).

Contrary to the appellant's contention, the State did not attempt to admit this testimony as a "second outcry" statement. (App'nt Brf. 19-20). Although the appellant does not argue that the testimony constituted backdoor hearsay, Lincon's testimony also did not lead to any "inescapable conclusions" as to the substance of an out-of-court statement. *See Head v. State*, 4 S.W.3d 258, 261-62 (Tex. Crim. App. 1999) (holding that the issue of "[w]hether the disputed testimony

violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context."). The trial court could have reasonably determined that the State's sole intent in pursuing this line of questioning was that it was Jane, not her mother, who conveyed the details to Lincon, rather than to convey the content of what Jane told her father to the jury.[4] *Cf. id.* (holding that the State's question to the investigating officer whether a witness' statement was consistent with other witnesses was not backdoor hearsay; it revealed that three statements related basically the same facts, but did not reveal the substance of what those facts were). Therefore, the trial court did not abuse its discretion in admitting this portion of Lincon's testimony.

Additionally, because the appellant failed to object to the same evidence during Noemi's testimony, he waived any error in the admission of this statement (4 RR 67-68). *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring to preserve error for appellate review, party must object each time inadmissible evidence is offered); *Gurka v. State*, 82 S.W.3d 416, 422 (Tex. App.—Austin 2002, pet. ref'd) (holding that testimony by victim's friend regarding conversation with victim was admissible at trial for aggravated sexual assault of a child where victim had already

---

[4] The prosecutor repeatedly told Lincon not to go into what Noemi or Jane said during the line of questioning before and after this particular question (5 RR 109-10). The prosecutor did not attempt to elicit any details of what Jane told Lincon; rather, she focused on the fact that Jane told him the details and her demeanor. *See* (5 RR 109-10). And the State did not notice Lincon as an outcry witness pursuant to Article 38.072 of the Texas Code of Criminal Procedure (CR – 70-71). *See* TEX. CODE CRIM. PROC. ANN. § art. 38.072 (West supp. 2014).

testified as to the conversation without objection, and testimony was relevant to question of whether conversation occurred, not its substance). Furthermore, appellant's objection was arguably not timely becakmcuse it did not come until after the Lincon gave Jane's name (5 RR 110). *See Reynolds v. State*, 848 S.W.2d 785, 792 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (finding the appellant failed to preserve error where the objection came after the witness completed his answer); *Thompson v. State*, 691 S.W.2d 627, 635 (Tex. Crim. App. 1984) (stating timely objection must be made as soon as ground of objection becomes apparent). Therefore, the appellant's sixth point of error is without merit and should be overruled.

Even assuming the testimony should not have been admitted, the appellant was not harmed. Under Rule 44.2(b) of the Texas Rules of Appellate Procedure, any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b); TEX. R. EVID. 103; *Walters v. State*, 247 S.W.3d 204, 218-19 (Tex. Crim. App. 2007). Courts have determined that substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Solomon v. State*, 49

S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Walters*, 247 S.W.3d at 218.

Viewing the record as a whole, the admission of Lincon's testimony either did not influence or had only a very slight influence on the verdict. Here, as discussed below, the jury had substantial if not overwhelming, evidence to support the conclusion that the appellant was guilty of sexually assaulting Jane even without Lincon's testimony. *See Motilla*, 78 S.W.3d at 358 (noting that the weight of the evidence of the defendant's guilt is a factor to be considered in a harm analysis); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004) (holding harmless error where the trial court erroneously admitted hearsay evidence because of the considerable amount of other evidence).

Additionally, as previously stated, the same or similar evidence was admitted without objection during Noemi's testimony (4 RR 67-8). *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (noting that another factor to be considered in a harm analysis is if the same or similar evidence is admitted without objection at another point in trial); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding improper admission of outcry testimony was harmless where similar testimony was admitted through complainant, pediatrician, and medical records).

Moreover, the State did not emphasize this portion of Lincon's testimony during argument. *See Biggs v. State*, 921 S.W.2d 282, 285 (Tex. App.—Houston [1st Dist.] 1995, pet. granted) (finding the extent the error was emphasized is another factor to be considered in a harm analysis (citing *Harris v. State*, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989)). Rather, the State focused on Jane's testimony, the appellant's statement, and the DNA evidence (7 RR 142-58). Furthermore, as previously stated, Lincon did not testify to any of the details of what Jane told him, but merely stated that Jane was the one who informed him of the abuse (5 RR 110). It certainly did not "substantially sway" the jury in reaching its verdict. Accordingly, this Court should conclude the error if any, in allowing Carbajal's testimony was harmless. *See* TEX. R. APP. P. 44.2(b). The appellant's sixth point of error should be overruled.

## REPLY TO APPELLANT'S SEVENTH POINT OF ERROR

In the appellant's seventh point of error, he argues that the evidence presented in his case was legally insufficient to convince any rational factfinder beyond a reasonable doubt that he committed the offense of aggravated sexual assault of a child. (App'nt Brf. 20-22).

### I.     Standard of Review and Applicable Law

Every criminal conviction must be supported by legally sufficient evidence that each element of the offense is proven beyond a reasonable doubt. *Jackson v.*

*Virginia*, 443 U.S. 307, 315 (1979); *Adames v. State*, 353 S.W.3d 854, 853 (Tex. Crim. App. 2011). In order to determine whether this standard has been met, an appellate court reviews all the evidence in the light most favorable to the verdict and decides whether, based on that evidence and reasonable inferences, a rational factfinder could have found each essential element of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319 (finding that "the relevant question is whether, after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Reed v. State*, 158 S.W.3d 44, 46 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). This applies equally to the analysis of direct or circumstantial evidence in the record. *Reed*, 158 S.W.3d at 47.

Circumstantial evidence alone can be sufficient to establish guilt, and is analyzed the same as direct evidence in the record. *Temple*, 390 S.W.3d at 359 ("A criminal conviction may be based upon circumstantial evidence."); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (noting "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and that "circumstantial evidence alone can be sufficient to establish guilt."); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (same). Not every fact has to point to the defendant's guilt, rather "it is enough if the conclusion is warranted by the

combined and cumulative force of all the incriminating circumstances." *Temple*, 390 S.W.3d at 359 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)); *see Clayton*, 235 S.W.3d at 778. When conflicts appear in the record a reviewing court must presume the trier of fact resolved the conflict in favor of the verdict and should defer to that resolution. *Id.* at 360.

The jury's role is to "weigh the evidence, to judge the credibility of the witnesses, and to choose between the conflicting theories of the case." *Lopez v. State*, 884 S.W.2d 918, 921 (Tex. App.—Austin 1994, pet. ref'd) (citing *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App.1991) (overruled in part on other grounds by *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000))); *see also Gonzalez v. State*, 337 S.W.3d 473, 480 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (finding a rational juror could believe the appellant sexually assaulted the complainant in resolving conflicting testimony between what the complainant testified to and what she told the sexual-assault-examination nurse)

This Court's role is not to simply compare an appellant's analysis of the evidence against the State's analysis of the same evidence. *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex. Crim. App. 2000). Rather, this Court must uphold the verdict unless a factfinder does not act rationally. *Laster v. State*, 275 S.W.3d 512, 517-518 (Tex. Crim. App. 2009) (stating this Court's role is to guard against this "rare occurrence" where a jury acts irrationally).

## II. The evidence is legally sufficient to support the appellant's conviction for aggravated sexual assault of a child.

The jury concluded beyond a reasonable doubt that on or about August 2, 2011, the appellant intentionally or knowingly caused the sexual organ of Jane, a person younger than fourteen years of age, to contact his mouth (CR – 9). TEX. PENAL CODE § 22.021(a)(1)(B) (West supp. 2014). The record contains abundant evidence from which the jury could rationally find each element of aggravated sexual assault of a child beyond a reasonable doubt.

Jane testified that the appellant sexually assaulted her multiple times (6 RR 20-21). Jane told the jury that the appellant licked her private part with his tongue on two separate occasions (6 RR 21). She explained that his tongue moved up and down and demonstrated the "stroking" movement with her finger (6 RR 19-20, 23-24). Using anatomically correct dolls, Jane demonstrated the position the appellant was in by placing the male doll's mouth on the female doll's private part (6 RR 11-12, 15). Jane pointed to the genitals of the female doll when referring to her private part[5] (6 RR 11-12). She testified that her private part is used for peeing (6 RR 11-12).

---

[5] The record reflects that Jane pointed to the doll's female sexual organ (6 RR 12). Additionally, Noemi testified that Jane used the term "privates" to refer to her female genitalia (6 RR 67). *See Lee v. State*, 176 S.W.3d 452, 457 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006) (holding that the victim's statement that "Papa touched me in my privates" was sufficient to show sexual contact; noting that as long as the child communicates to the trier of fact that the touching occurred on a part of the body within the definition of the statute, the evidence will be sufficient).

Jane described the last time the appellant sexually abused her in detail. She stated that it happened the last time she spent the night at the appellant's house (6 RR 13). She explained that she was asleep in bed with her cousin, Janelle, when she woke up to a "weird feeling" (6 RR 13-14). Jane described that weird feeling was the appellant's tongue; the appellant was licking her private part (6 RR 10-14). She testified his tongue licked her skin (6 RR 14). She explained that he had taken off her pants and pulled her underwear down (6 RR 15). Jane testified that she knew it was the appellant because she saw his hair and the side of his face (6 RR 14).

Jane explained that she felt scared (6 RR 16). She stated that afterward she put her underwear back on (6 RR 17). Jane testified that she told her mom about the appellant licking her privates because she wanted him to stop (6 RR 18). Jane testified that she has not seen the appellant in three years and that she was seven at the time of trial (6 RR 4, 24). Jane's testimony that the appellant licked her private part met each element of aggravated sexual assault of a child; thus, was sufficient to support the jury's verdict. *See Johnson v. State*, 419 S.W.3d 665, 671-72 (Tex. App.—Houston [1st Dist.] 2013), *pet. ref'd* (Mar. 19, 2014) (holding the victim's testimony that the appellant inserted his finger into her vagina itself satisfied the elements of aggravated sexual assault of a child and was sufficient to support a conviction).

The appellant argues that the evidence is not sufficient to sustain a conviction because there were no eyewitnesses, physical signs of sexual assault, or bodily fluids found. (App'nt Brf. 21-22). But Jane's testimony met each element of aggravated sexual assault of a child. And the testimony of a single witness may be legally sufficient to support a conviction of a criminal offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West supp. 2014) (stating that a conviction under Chapter 21, among other enumerated provisions, of the Texas Penal Code may be supported by the uncorroborated testimony of the victim of the sexual offense); *Lee*, 176 S.W.3d at 455 (holding that "[t]he testimony of a child victim alone is sufficient to support a conviction for indecency with a child."); *see also In re R.R.*, 373 S.W.3d 730, 734-35 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (holding "a rational factfinder could have found that [the appellant] intentionally or knowingly caused the penetration of a child's sexual organ" based only on the victim's testimony that the appellant "stuck his penis in my vagina").

Additionally, the determination of what weight to give that testimony is within the sole province of the jury when it turns on credibility and demeanor. *Clayton*, 235 S.W.3d at 778. The evidence on appeal must be viewed in the light most favorable to the jury's verdict. *Id.* Viewing Jane's testimony in the light most favorable to the jury's decision, it is sufficient to support a rational finding that she was assaulted by the appellant. *Id.*; *Johnson*, 419 S.W.3d at 671.

Moreover, the DNA evidence corroborated Jane's testimony. Pierce testified that male DNA was found on Jane's underwear that she had worn the night she was sexually assaulted (6 RR 84-85). Pierce explained that swabs were taken from the crotch area of Jane's underwear (6 RR 96). From her testing, Pierce determined that the appellant could not be excluded as a contributor (6 RR 86-87). Pierce testified that every allele of the DNA found on Jane's underwear was consistent with the appellant's DNA except for one (6 RR 91, 96). Pierce could not testify with certainty[6] that it was the appellant or explain how his DNA got on the underwear, but coupled with Jane's testimony it is still sufficient evidence to support the jury's decision (6 RR 97, 101-107). *Id.*; *see also Roberson v. State*, 16 S.W.3d 156, 167-68 (Tex. App.—Austin 2000, pet. ref'd) (finding DNA evidence was strong evidence of the appellant's participation in the crime, and when considered in relation to the other evidence it was sufficient to sustain the appellant's conviction for aggravated sexual assault even though victim could not identify her assailant).

Furthermore, Jane's mother corroborated her testimony. Noemi stated that Jane appeared angry and in a bad mood after spending the night at the appellant's home (4 RR 60-62). Noemi testified that Jane was four years old when she told her that the appellant licked her private part (4 RR 60, 65-67). She explained that Jane appeared scared after telling her about the abuse (4 RR 66). Noemi's testimony

---

[6] Pierce testified the probability of randomly selecting an unrelated person as the source of the profile was the statistic "1 in 1,685 for Caucasians; 1 in 1,601 for African-Americans; 1 in 285 for Hispanics." (6 RR 97).

about what Jane told her was consistent with Jane's testimony – that the appellant licked her private part in Janelle's bed (4 RR 65-66). Noemi was also able to demonstrate what Jane showed her the appellant did with his tongue (4 RR 66-67). And Noemi testified about how close the families were, providing no reason to for Jane to lie against her uncle (4 RR 60-93).

The appellant argues that there was no physical evidence of abuse. (App'nt Brf. 21). But physical evidence is not required. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding that victim's testimony was sufficient to prove sexual contact occurred despite a lack of physical evidence); *Tinker v. State*, 148 S.W.3d 666, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting despite the lack of DNA evidence, the complainant's testimony alone was sufficient to support the jury's verdict that sexual contact did occur); *Campos v. State*, 01-13-00415-CR, 2015 WL 162123, at *6 (Tex. App.—Houston [1st Dist.] Jan. 13, 2015), *reh'g overruled* (Feb. 19, 2015), *petition for discretionary review filed* (Apr. 22, 2015) ("The State has no burden to produce any corroborating or physical evidence."). Additionally, the DNA evidence was physical evidence connecting the appellant to the crime. *See id.* Regardless, the lack of physical or forensic evidence is merely a factor for the jury to consider in weighting the evidence. *Lee*, 176 S.W.3d at 458.

Reviewing the record in the light most favorable to the jury's verdict, and allowing for the credibility determinations and logical inferences that the jury was permitted to make from the evidence, there is sufficient evidence for a rational trier of fact to have concluded beyond a reasonable doubt that the appellant was guilty of each element of aggravated sexual assault of a child. *See Clayton*, 235 S.W.3d at 778-79 (noting that when a record supports conflicting inferences, a reviewing court presumes that the factfinder resolved the conflict in favor of their verdict); *Powell v.State*, 194 S.W.3d 503, 508 (Tex. Crim. App. 2006); *Jackson*, 443 U.S. at 319. Thus, the appellant's seventh point of error should be overruled.

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

DEVON ANDERSON
District Attorney
Harris County, Texas

/s/ *Katie Davis*

KATIE M. DAVIS
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 8,252 words in it; and (b) a copy of the foregoing instrument will be served by efile.txcourts.gov to:

Joe David Wells
PO Box 2064
Houston, TX 77252
(281) 410-8778
joedavidwells@gmail.com


/s/ _Katie Davis_

KATIE M. DAVIS
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242

Date: May 29, 2015

34